**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **WAKANA FUJIWARA**<br>**7 Via Sevilla**<br>**Rolling Hills Estates, California 90274**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LISA M. OSBON**<br>**9854 Notting Hill Drive**<br>**Frederick, Maryland 21704**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. _____ |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW Plaintiff Wakana Fujiwara ("Plaintiff," "Ms. Fujiwara"), and for her

Complaint against Defendant Lisa M. Osbon ("Defendant"), states as follows:

### JURISDICTION AND VENUE

1.      Subject matter jurisdiction in this matter is founded on diversity of citizenship and

amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2.      The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars

($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3.      Venue in this action properly lies in the United States District Court for the

District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or

omissions giving rise to this claim occurred in this judicial district.

### PARTIES

4.      Plaintiff Wakana Fujiwara is an adult citizen of the State of California, residing at

7 Via Sevilla, Rolling Hills Estates, California 90274.

5.      Defendant Lisa M. Osbon is an adult resident of the State of Maryland, residing at 9854 Notting Hill Drive, Frederick, Maryland 21704.

## FACTS

6.      On September 27, 2017, Ms. Fujiwara was a pedestrian lawfully crossing Reservoir Road, N.W., (in the crosswalk) at its intersection with 39th Street, N.W, adjacent to the Georgetown University Medical and Dental Building.

7.      At all relevant times, Ms. Fujiwara had the "walk" signal to cross Reservoir Road.

8.      At the same time, Defendant was approaching the crosswalk driving eastbound in her Mercedes-Benz 300 Series.

9.      While Ms. Fujiwara was traversing the crosswalk directly in front of Defendant's vehicle, Defendant, suddenly and without warning, illegally accelerated through the solid red light facing her.

10.     Defendant's vehicle violently struck Ms. Fujiwara on her left leg at the knee level, sending her to the pavement.

11.     Bystanders rushed to assist Ms. Fujiwara and called 911.

12.     Russell Sillmon, an independent witness to the collision, confirms that the above is how the collision occurred.

13.     Prior to the collision, Mr. Sillmon was standing on the opposite corner of the street from Ms. Fujiwara and was waiting to cross Reservoir Road in the direction of Ms. Fujiwara.

14.     Mr. Sillmon stated that the crosswalk sign changed and displayed the signal allowing both he and Ms. Fujiwara to cross Reservoir Road, which they both began to do.

15.    Mr. Sillmon stated that at this point he saw a vehicle fly through the crosswalk and strike Ms. Fujiwara, sending her legs into the air, and causing her to disappear from view.

16.    Mr. Sillmon then immediately ran to Ms. Fujiwara to assist her.

17.    Mr. Sillmon stated that Ms. Fujiwara appeared to be in shock.

18.    Mr. Sillmon observed that Ms. Fujiwara's leg was in a weird position, her wrist appeared injured, her face looked flushed, and that she was complaining about neck pain.

19.    While Mr. Sillmon was tending to Ms. Fujiwara, Mr. Sillmon states that Defendant ran up to them and stated "I'm so sorry, I'm so sorry. I didn't see you, I didn't see you," which she repeated multiple times.

20.    Mr. Sillmon confronted Defendant about her running the red light, but Defendant did not respond.

21.    Officers Adam Sotelo and Gavin Nelson of the Metropolitan Police Department responded to the scene to investigate the collision.

22.    Defendant admitted to the officers that she was not sure whether she ran a red light.

23.    The officers found that Defendant was at fault for the collision and issued her citations for running a red light and colliding with a pedestrian.

24.    The officers further found that Ms. Fujiwara had taken no improper action which may have led to the collision.

25.    As a direct and proximate result of Defendant's tortious actions as aforesaid, Plaintiff suffered severe and permanent injuries to numerous parts of her body, including but not limited to, a displaced comminuted intra-articular fracture of the left tibial plateau, a comminuted fracture of the left fibular head, a displaced comminuted oblique left clavicle fracture, and Post

Traumatic Stress Disorder. Ms. Fujiwara's injuries necessitated surgery (including the permanent placement of a plate and eight screws in her left knee) and extensive rehabilitation.

26.     At no time did Plaintiff act in a negligent manner, nor did she assume any risk.

### COUNT I
### (Negligence and Negligence *Per Se*)

27.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

28.     The aforesaid incident was caused by and was the direct, sole, and proximate result of the negligence of Defendant.

29.     At all relevant times, Defendant owed Plaintiff a duty of care to operate her vehicle in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances.

30.     At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2213.4, which provides: "An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."

31.     18 D.C.M.R. § 2213.4 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendant cannot offer an explanation as to the violation of such regulation, thereby rendering Defendant negligent *per se* (*i.e.*, as a matter of law).

32.     At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2208.11, which provides: "A driver of any vehicle shall stop and give the right-of-way to a pedestrian who has begun crossing on the 'WALK' signal to continue to the opposite sidewalk or safety island, whichever is nearest."

33.    18 D.C.M.R. § 2208.11 was enacted to prevent the type of incident that occurred

(and to protect persons such as Plaintiff), and Defendant cannot offer an explanation as to the

violation of such regulation, thereby rendering Defendant negligent *per se* (*i.e.*, as a matter of

law).

34.    At all relevant times herein, there was in effect in the District of Columbia 18

D.C.M.R. § 2103.7,[1] which provides, in relevant part:

A STEADY RED SIGNAL alone or the word "STOP" shall have the following meaning:

    (a)    Vehicular traffic facing the signal shall stop before entering the
crosswalk on the near side of the intersection or, if none, then before
entering the intersection;

    (b)    Stopped vehicles shall remain standing until green, green arrow, or
flashing yellow is shown, except as provided in paragraph (c) of this
subsection; and

    (c)    A vehicle facing a steady red signal may cautiously enter the
intersection to turn right after stopping. The vehicle shall yield right-
of-way to pedestrians within an adjacent crosswalk and to other
traffic lawfully using the intersection.

35.    18 D.C.M.R. §§ 2103.1 and 2103.7 were enacted to prevent the type of incident

that occurred (and to protect persons such as Plaintiff), and Defendant cannot offer an

explanation as to the violation of such regulation, thereby rendering Defendant negligent *per se*

(*i.e.*, as a matter of law).

36.    At all relevant times herein, there was in effect in the District of Columbia D.C.

Code § 50–2201.04, which provides: "A person shall be guilty of reckless driving if the person

drives a vehicle upon a highway carelessly and heedlessly in willful or wanton disregard for the

---

[1] District of Columbia 18 D.C.M.R. § 2103.1, also in effect at all relevant times herein, dictated
that the terms and lights described in 18 D.C.M.R. § 2103, *et seq.* applied to drivers in the
District of Columbia.

rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger a person or property."

37.    D.C. Code § 50–2201.04 was enacted to prevent the type of incident that occurred (and to protect persons such as Plaintiff), and Defendant cannot offer an explanation as to the violation of such regulation, thereby rendering Defendant negligent *per se* (*i.e.*, as a matter of law).

38.    Defendant breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a)    Failure to pay full time and attention to the operation of her vehicle;

(b)    Failure to keep a proper lookout;

(c)    Failure to operate her vehicle safely;

(d)    Failure to yield the right of way;

(e)    Failure to adhere to traffic signals;

(f)    Causing a collision; and,

(g)    Violating the above-listed local regulations without explanation.

39.    Plaintiff's injuries were a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant.

40.    Plaintiff acted properly in all respects and was free from negligence in connection with this incident.

41.    As a direct and proximate result of the negligent acts and omissions of Defendant, Plaintiff suffered fear, as well as serious and permanent emotional and bodily injuries including, *inter alia*, a displaced comminuted intra-articular fracture of the left tibial plateau, a comminuted fracture of the left fibular head, a displaced comminuted oblique left clavicle fracture, and Post

Traumatic Stress Disorder. Ms. Fujiwara's injuries necessitated surgery (including the permanent placement of a plate and eight screws in her left knee) and extensive rehabilitation. As a result of her required surgery, Plaintiff is left with a large permanent scar on her left knee.

42.     As a further direct and proximate result of the negligent acts and omissions of Defendant, Plaintiff suffered and will continue to suffer intense physical and emotional pain and suffering.

43.     As a further direct and proximate result of the negligent acts and omissions of Defendant, Plaintiff incurred and will in the future continue to incur significant medical expenses, including, but not limited to those costs associated with her EMS transport, hospitalization, surgery (and surgical hardware), and rehabilitation. To date, Plaintiff's incident-related past medical expenses total over $120,000.00. Further, Plaintiff will incur future incident-related medical expenses related to the hardware placed in her knee as a result of the collision and her surgical scarring from the incident.

44.     As a further direct and proximate result of the negligent acts and omissions of Defendant, Plaintiff was, and continues to be, prevented from pursuing her normal routine and customary activities.

45.     For such injuries proximately resulting from the negligent acts and omissions of Defendant, Defendant is liable to Plaintiff for compensatory damages in the amount of not less than One Million Five Hundred Thousand Dollars ($1,500,000.00), which amount shall be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant, as follows: (1) compensatory damages in the amount of not less than One Million Five Hundred Thousand Dollars ($1,500,000.00), which shall be proven at trial; (2) pre- and

post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

### JURY TRIAL REQUESTED

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

WAKANA FUJIWARA

By:    Kenneth J. LaDuca, D.C. Bar #1031173
GRENIER LAW GROUP PLLC
1920 L Street, N.W., Suite 750
Washington, D.C. 20036
kladuca@grenierlawgroup.com
Tel: (202) 768-9600
Fax: (202) 768-9604

Dated: November 2, 2018